**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                        No. CR 19-0027 RB

DELISA WILLIAMS,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Ms. Williams's Motion for Compassionate Release, filed on December 17, 2020. (Doc. 37.) Having reviewed the parties' submissions, the record, and the applicable law, the Court finds the motion is not well-taken and should be **DENIED**.

I.    **Background**

On January 7, 2019, Ms. Williams pled guilty to an Indictment charging: (1) distribution of 50 grams and more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); (2) felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1); and (3) possession with intent to distribute a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). (Docs. 15–19.) United States District Judge J. Thomas Marten sentenced Ms. Williams to 60 months imprisonment. (Docs. 28–29.)

Ms. Williams has served approximately 30 months; with good time credit, she has served the equivalent of approximately 41 months or 68% of her sentence. (*See* Doc. 37 at 2.) Her anticipated release date is November 23, 2022. *See* Inmate Locator, https://www.bop.gov/

inmateloc/ (last visited Feb. 27, 2021). She now moves the Court, pursuant to 18 U.S.C. § 3582(c)(1)(A), to reduce her sentence due to the COVID-19 pandemic. (*See* Doc. 37.)

## II.    Discussion

Ms. Williams seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), which permits a sentencing court to grant such a motion where "extraordinary and compelling reasons warrant such a reduction" and the "reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . ." Prior to the passage of the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018), only the Director of the Bureau of Prisons (BOP) could file a motion for compassionate release. Section 603(b) of the First Step Act now provides that a sentencing court may modify a sentence either upon a motion of the Director of the BOP "or upon motion of the defendant after he has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on his behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility . . . ." 18 U.S.C. § 3582(c)(1)(A). Ms. Williams filed such a request with FCI Carswell on July 9, 2020. (*See* Doc. 37-1.) The warden denied the request. (*See* Doc. 37-2.) Thus, the Government concedes that she has exhausted her administrative remedies. (*See* Doc. 41 at 9.)

Ms. Williams asserts that extraordinary and compelling circumstances exist due to the unprecedented COVID-19 pandemic. (Doc. 37 at 2–5.) She argues that her medical conditions put her at risk for severe illness from COVID-19. (*Id.* at 3.) The medical record shows that Ms. Williams has been diagnosed with a seizure disorder.[1] (Doc. 40-E at 6.) There is also evidence that Ms. Williams has high cholesterol and is obese with a BMI of 32.6. (*See id.* at 108, 215.) *See also Calculate Your Body Mass Index*, NIH, https://www.nhlbi.nih.gov/health/educational/lose_wt/

---

[1] Ms. Williams asserts that she also suffers from asthma (*see* Doc. 37 at 3), but the Court was unable to locate any supporting medical records (*see* Doc. 40-E).

BMI/bmicalc.htm (last visited Feb. 27, 2021). Although it quibbles with the history of Ms. Williams's weight, the Government acknowledges that the CDC lists obesity as a medical condition that puts individuals at an increased risk for severe illness from COVID-19. (*See* Doc. 41 at 11–12.)

There is also record evidence to show that Ms. Williams had a confirmed case of COVID-19 on or around July 13, 2020. (*See* Doc. 40-E at 137.) She had a cough, chills, tiredness, and diarrhea. (*See id.* at 124, 129, 137.) She remained in isolation for more than two weeks and was deemed recovered on August 4, 2020, with "improvement/absence of symptoms" and "[n]o complaints." (*See id.* at 122.) There is no indication that Ms. Williams has had any lingering effects from her COVID-19 diagnosis, thereby "mitigating [her] concern that [she] would develop severe complications if infected with the virus." *See United States v. Hollins*, No. 15-20100-JAR, 2021 WL 103017, at *2 (D. Kan. Jan. 12, 2021). "While the Court recognizes the risk of reinfection and is sympathetic to [Ms. Williams's] concerns about the BOP's COVID-19 response," other factors weight against a sentence reduction in this case. *See id.*

In addition to finding that an extraordinary and compelling reason exists for a sentence reduction, § 1B1.13 directs courts to consider "the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable" and whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S. Sentencing Guidelines § 1B1.13 & (2).

Section 3553 requires courts to "impose a sentence sufficient, but not greater than necessary," in consideration of the following factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ;
(5) any pertinent policy statement . . . issued by the Sentencing Commission . . . ;
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Section 3142 requires courts to consider:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
(2) the weight of the evidence against the person;
(3) the history and characteristics of the person, including--
(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

18 U.S.C. § 3142(g).

The Government argues that Ms. Williams would pose a danger to public safety if she were to be released. (Doc. 38 at 14.) The Court agrees that Ms. Williams's criminal history counsels against release. Her most current conviction involved the sale of methamphetamine and firearms, including a short barrel shotgun. In the four years before her most recent arrest, she received convictions for shoplifting, theft, fraud (a forged check), and two convictions for possession of

methamphetamine. (*See* Doc. 26 (PSR) ¶¶ 48–52.) These convictions resulted in a criminal history category of V. (*Id.* ¶ 55.)

Of further concern to the Court is Ms. Williams's vague release plan. She asserts in her motion that she "plans to reintegrate into society through a halfway house and return to her family and four children."[2] (Doc. 37 at 2.) In her reply brief, however, she states that she plans to live with her fiancé. (Doc. 42 at 6.) Given Ms. Williams's history, the Court believes that she would be better prepared for a successful transition by finishing the remainder of her sentence and receiving a placement at a halfway house.

The undersigned encourages Ms. Williams to continue with her drug and alcohol counseling and to improve her chances at a successful transition through work and educational programming.

**THEREFORE,**

**IT IS ORDERED** that Ms. Williams's Motion for Compassionate Release (Doc. 37) is **DENIED**.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE

---

[2] At the time of the PSR, Ms. Williams reported that her ex-husband was granted primary physical custody of her two oldest children on January 15, 2014, and she had not seen her sons in approximately five years. (PSR ¶ 65.) The New Mexico Children, Youth and Families Department took custody of her two youngest children and placed them into foster care in 2016. (*Id.* ¶ 67.)